# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ORA WILLIAMS** | **CIVIL ACTION NO.** |
| **VERSUS** | **18-876-SDD-EWD** |
| **MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND VIOLA HUNT** | |

 Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

 In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

 ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

 Signed in Baton Rouge, Louisiana, on August 20, 2019.

             *[signature]*
             **ERIN WILDER-DOOMES**
             **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ORA WILLIAMS | CIVIL ACTION NO. |
| VERSUS | 18-876-SDD-EWD |
| MISSISSIPPI FARM BUREAU<br>CASUALTY INSURANCE COMPANY,<br>STATE FARM MUTUAL AUTOMOBILE<br>INSURANCE COMPANY AND<br>VIOLA HUNT | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion to Remand ("Motion")[1] filed by Plaintiff Ora Williams ("Plaintiff"). The Motion is opposed by removing party Mississippi Farm Bureau Casualty Insurance Company ("MFB"). For the reasons set forth herein, the undersigned recommends[2] that the Motion be granted in part and that this action be remanded to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana for lack of subject matter jurisdiction under 28 U.S.C. § 1332. To the extent Plaintiff requests an award of costs and attorney's fees[3] under 28 U.S.C. § 1447(c), the undersigned recommends that such request be denied.

**I.    Facts and Procedural Background**

This is a civil action involving claims for damages. Plaintiff alleges she was injured on October 24, 2017 in East Baton Rouge Parish when her car was struck by the car driven by Defendant Viola Hunt ("Hunt").[4] On or about August 30, 2018, Plaintiff filed her Petition for

---

[1] R. Doc. 15.
[2] The Fifth Circuit has held that "a motion to remand is a dispositive matter on which a magistrate judge should enter a recommendation to the district court subject to *de novo* review." *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016).
[3] R. Doc. 15-1, p. 5.
[4] R. Doc. 1-2, p. 4, ¶¶ 3-4.

Damages ("Petition") against Hunt; Hunt's insurer, MFB; and Plaintiff's uninsured motorist carrier, State Farm Mutual Automobile Insurance Company ("State Farm") (collectively, "Defendants") in the Nineteenth Judicial District Court for the Parish of East Baton Rouge.[5] On October 2, 2018, MFB removed Plaintiff's suit on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[6]

*Initial Deficiencies in Notice of Removal*

With respect to the citizenship of the parties, the allegations in the Notice of Removal were sufficient to establish the citizenship of Plaintiff (Louisiana), Hunt (Mississippi)[7] and MFB (Mississippi).[8]  As to State Farm, however, the Notice of Removal stated that State Farm "is an insurer licensed to do business in Louisiana but domiciled in Illinois" and "[t]he principal place of business of State Farm…is Illinois."[9]  As the Notice of Removal did not clearly allege State Farm's place of incorporation, the citizenship allegation as to State Farm was deficient.

Regarding the amount in controversy, Plaintiff only generally asserted the following damages in her Petition: pain and suffering, mental anguish and suffering, loss of enjoyment of life, and medical expenses,  as well as "other damages" proven at trial, costs, and interest.[10]  These boilerplate allegations did not contain any information regarding the actual injuries Plaintiff sustained as a result of the incident or the amount of expenses incurred thus far and were insufficient to establish the amount in controversy.  "Courts have routinely held that pleading general categories of damages, such as 'pain and suffering, disability, lost wages, loss of earning capacity, medical expenses, etc.,' without any indication of the amount of the damages sought,

---

[5] R. Doc. 1-2.
[6] R. Doc. 1, ¶ 8. MFB alleged in the Notice of Removal that Hunt and State Farm consent to the removal. R. Doc. 1, ¶ 11 *and see* R. Doc. 1-4, p. 1.
[7] R. Doc. 1, ¶ 1.  Paragraph 7 also states that Plaintiff is a citizen of Louisiana. R. Doc. 1, ¶¶ 3, 7.
[8] *See* R. Doc. 6, pp. 1-2.
[9] R. Doc. 1, ¶¶ 1-2.  *See also* ¶ 7, stating that State Farm is a corporation domiciled in Illinois.
[10] R. Doc. 1-2, p. 3, ¶ 2, p. 5, ¶ 9, and prayer for relief.

does not provide sufficient information for the removing defendant to meet his burden of proving that the amount in controversy is satisfied under the 'facially apparent' test."[11] Nor did the Notice of Removal contain enough information to indicate whether Plaintiff's claims would likely exceed $75,000, exclusive of interest and costs. The original Notice of Removal merely stated that, "it is factually apparent from the allegations of the Petition for Damages and the nature of the claims asserted that the amount in controversy exceeds the amount required for diversity jurisdiction and that the Plaintiff will ask a jury for an amount in excess of the jurisdictional threshold of $75,000."[12] However, it was not facially apparent from the Petition that the jurisdictional minimum was met.

MFB's reliance on Plaintiff's refusal to stipulate also failed to establish that Plaintiff's claims exceeded the jurisdictional threshold. Specifically, MFB asserted that Plaintiff would not respond to MFB's invitation to enter into a stipulation that her damages did not exceed $75,000.[13] According to MFB, Plaintiff's counsel later stated during a telephone call that the amount in controversy was "for the jury to decide" and that the case "may be worth $74,000 or it may be worth $80,000." When MFB asked Plaintiff's counsel what amounts the jury would be asked to give, Plaintiff's counsel said he "would not give them any numbers at all," and then said, "he will have more information about the case by that time and he could not say presently."[14] These statements did not establish that Plaintiff's alleged damages would exceed $75,000, exclusive of interest and costs, and Plaintiff's refusal to sign a binding stipulation "is only one factor to consider

---

[11] *Davis v. JK & T Wings, Inc.*, No. 11-501, 2012 WL 278728, at *3 (M.D. La. Jan. 6, 2012), and cases cited therein.
[12] R. Doc. 1, ¶ 6.
[13] R. Doc. 1, ¶ 6, R. Doc. 1-3, pp. 1-4, and R. Doc. 1-4, p. 1.
[14] R. Doc. 1-2, ¶ 6.

3

in determining whether a removing party has met its burden, and alone does not establish that this Court has jurisdiction."[15]

### *Amended Notice of Removal*

In light of the foregoing deficiencies, on October 4, 2018, the undersigned *sua sponte* ordered MFB to file an amended notice of removal that adequately alleged the citizenship of State Farm, as well as a memorandum and supporting evidence regarding the amount in controversy.[16] On October 5, 2018, MFB filed its Motion to Substitute Notice of Removal, which was denied as deficient.[17] On October 11, 2018, MFB filed its second Motion to Substitute Notice of Removal ("Amended Notice"), which was granted.[18] The Amended Notice properly alleged the citizenship of State Farm and established diversity of citizenship among the parties.[19]

On October 10, 2018 MFB filed its Memorandum in Support of Removal ("Memorandum") in compliance with the Court's October 4, 2018 Order addressing the amount in controversy.[20] Plaintiff responded with the instant Motion, seeking remand of this matter to state court for failure of MFB to establish amount in controversy.[21]

---

[15] *Cuillier v. Allstate Ins. Co.*, No. 07-5841, 2007 WL 4591229, at *1 (E.D. La. Dec. 28, 2007); *Adams v. Hanover Ins. Co.*, No. 07-6827, 2007 WL 4591230, at *1 (E.D. La. Dec. 28, 2007); *Manuel v. American Western Home Ins. Co.*, No. 07-1883, 2007 WL 4570896, at *1 (W.D. La. Dec. 20, 2007).
[16] R. Doc. 6.
[17] R. Docs. 7, 9.
[18] R. Docs. 11, 11-1, and 12.
[19] R. Doc. 11-1, ¶¶ 1-3.
[20] R. Doc. 10.
[21] R. Doc. 15. The Motion was preceded by the Court's show cause order to Plaintiff, due to Plaintiff's failure to timely comply with the Court's October 4, 2018 Order. R. Doc. 14.

## II. Arguments of the Parties

### A. MFB's Amended Notice and Memorandum

MFB acknowledges that the jurisdictional facts supporting removal are examined at the time of removal, the removal statute is strictly construed, and any doubt as to the propriety of removal should be resolved in favor of remand.[22] MFB recognizes that, as the removing party, it has the burden to establish that the amount in controversy is met, in one of two ways: (1) either by demonstrating that it is "facially apparent" from the petition that the claim likely exceeds $75,000, or (2) by setting forth the facts in controversy that support a finding of the requisite amount.[23] MFB also concedes that Plaintiff, in compliance with Louisiana law, did not plead a specific amount of damages and only asserted claims for general and special damages for pain and suffering, mental anguish and suffering, loss of enjoyment of life, medical expenses, and "other damages" proven at trial.[24] MFB then argues two contrary positions. First, in the Amended Notice, MFB argues that "it is factually apparent from the allegations of the Petition of Damages and the nature of the claims asserted that the amount in controversy exceeds the amount required for diversity jurisdiction and that the Plaintiff will ask a jury for an amount in excess of the jurisdictional threshold of $75,000."[25] However, in the Memorandum, MFB contends the opposite: "It is not apparent from the face of the pleadings here that the amount in controversy is met so the first prong of the defendant's methods to prove it by a preponderance of the evidence

---

[22] R. Doc. 10, p. 4 *citing Gebbia v. Walmart Stores, Inc.,* 233 F.3d 880, 883 (5th Cir. 2000), *Herring v. Metropolitan Property & Cas. Ins. Co.,* No. 10-935, 2013 WL 3893282, at *2 (E.D. La. July 26, 2013) (*quoting In re Hot-Hed Inc.*, 477 F.3d 320, 323 (5th Cir. 2007)).
[23] R. Doc. 10, p. 4.
[24] R. Doc. 10, p. 4 and R. Doc. 11-1, p. 4. MFB also notes that Louisiana law, *i.e.*, La. C.C.P. art. 893(A)(1), requires a plaintiff to state generally whether her claim exceeds or is less than the requisite amount to establish the lack of federal court jurisdiction, but recognizes that such a statement is not dispositive of whether the amount in controversy requirement is met. R. Doc. 10, p. 4 *citing McCord v. ASI Lloyds/ASI Underwriters*, No. 13-126, 2013 WL 1196671, at *2 (E.D. La. Mar. 22, 2013). Plaintiff failed to make such a statement in this case.
[25] R. Doc. 11-1, p. 4.

5

cannot be met. The second prong, however, allows the defendant to introduce 'summary judgment type' evidence of facts in controversy."[26] MFB's relies on Plaintiff's medical records as its summary judgment-type evidence, and submits the same medical records summary in both the Amended Notice and Memorandum. According to the summary, at the time of the accident Plaintiff had a pre-existing cervical fusion at C5-6 (and possibly also at C6-7).[27] After the accident, Plaintiff complained of "4/10 neck and upper back pain, and headaches 'all the time,' and that she had weakness in both of her arms; she also complained of 4/10 low back pain and hip pain with left foot tingling as well as pain in both shoulders."[28]

MFB's summary also asserts that Plaintiff has undergone three months of treatment, including one visit to Lane Regional Medical Center on the date of the accident, for which Plaintiff incurred $1,635.26 in medical expenses.[29] Plaintiff attended four visits with orthopedist Dr. F. Allen Johnston for neck, back, shoulder, and hip pain from November to January 2018 for which Plaintiff incurred an additional $1,417 in medical expenses.[30] Dr. Johnson diagnosed "acute cervical and lumbar strain with spondylosis, cervical spasm, and status post anterior cervical disc fusion at C5-6 in 2010." Dr. Johnston recommended follow-up visits, physical therapy, anti-inflammatory, muscle relaxer and pain medications, and an MRI.[31] Finally, Plaintiff also attended approximately 21 physical therapy visits with Advanced Therapy Solutions from November 2017 until January 2018 for which Plaintiff incurred $4,870 in medical expenses,[32] for total medical

---

[26] R. Doc. 10, p. 5.
[27] *See* R. Doc. 11-2, p. 5 and p. 9.
[28] R. Doc. 11-1, ¶ 13 and R. Doc. 10, pp. 1-2. *See also* R. Doc. 11-2, pp. 8, 12.
[29] *See* R. Doc. 11-3 and p. 28.
[30] *See* R. Doc. 11-2, p. 16.
[31] R. Doc. 11-2, p. 9 and p. 14.
[32] R. Doc. 11-4, p. 39.

expenses of approximately $7,922.26. MFB contends that Plaintiff also has lost wages because the records indicate that she missed some time at work.[33]

MFB contends that plaintiffs with these same types of injuries and medical histories have been awarded more than $75,000 in damages. In support, MFB relies on *Pollet v. Louisiana Farm Bureau Cas. Ins. Co.*,[34] wherein the plaintiff had a prior neck surgery and was injured in a car accident for which she was awarded $75,000 in general damages and $7,687.55 in medical expenses, which MFB contends is only a few hundred dollars less than the amount of medical expenses in this case. The *Pollet* plaintiff had continuous pain and a "recurrent disc" but was not a surgery candidate.[35] MFB also relies on *Trahan v. Deville*,[36] wherein the plaintiff had neck and back pain and headaches, and was awarded $75,000 in general damages, $22,938.45 in past medical expenses, and $10,000 in future medical expenses. The *Trahan* plaintiff was also not a surgery candidate and her treatment consisted of massage therapy and chiropractic treatment for back pain, injections, diagnostic testing, and physical therapy for several months. Lastly, MFB relies on *Robinson v. Fontenot*,[37] wherein the plaintiff had prior back injuries and accidents and then suffered another injury that could have been the aggravation of a "significant preexisting condition." MFB argues that the *Robinson* plaintiff was awarded the exact amount proven as damages over about a three-month period, which MFB likens to Plaintiff in the instant matter, for a total award of $100,000.[38]

In its Amended Notice, MFB also relies on the correspondence between counsel, and the affidavit and stipulation proffered to Plaintiff, as evidence that Plaintiff's claims satisfy the

---

[33] *See* R. Doc. 11-2, p. 5 and p. 8, which indicate that Plaintiff worked at a child care center and p. 10 (doctor's excuse for work).
[34] R. Doc. 11-1, ¶ 14 and R. Doc. 10, p. 2 *citing* 99-208 (La. App. 5 Cir. 7/27/99), 751 So.2d 925.
[35] R. Doc. 10, p. 2 *citing id.* at 927-28.
[36] R. Doc. 11-1, ¶ 15 and R. Doc. 10, pp. 2-3 *citing* 05-1482 (La. App. 3 Cir. 5/10/06), 933 So.2d 187.
[37] R. Doc. 11-1, ¶ 16 and R. Doc. 10, p. 3 *citing* 02-0704 (La. 02/07/03), 837 So.2d 1280.
[38] R. Doc. 11-1, ¶ 16 and R. Doc. 10, p. 3 *citing id.* at 1286.

7

jurisdictional threshold.[39] However, MFB acknowledged in the Amended Notice that "a plaintiff's failure to stipulate that damages cannot exceed $75,000 is not determinative of the remand inquiry" and is only one factor to be considered.[40] [41]

### B. Plaintiff's Motion to Remand

Plaintiff asserts that the removal statutes are strictly construed in favor of remand, and doubts and ambiguities regarding removal are construed in favor of remand.[42] Further, Plaintiff contends that MFB has not met its burden of proving, by a preponderance of the evidence, that the amount in controversy is met. Plaintiff argues that there are no facts or allegations that establish that it is facially apparent that her claims exceed the jurisdictional threshold.[43] Plaintiff contends that MFB did not state in the Notice of Removal that it is facially apparent that the matter is removable, and instead only concluded that it was facially apparent through an "unsubstantiated opinion on the injuries that occurred as a result of this accident without providing any legal evidence that those injuries would result in a specific amount of money."[44]

In support, Plaintiff cites *Saxon v. Thomas*, wherein the U.S. District Court for the Western District of Louisiana held that boilerplate allegations of damages alone could not sustain the defendant's burden and remanded the case.[45] Plaintiff argues that she has only made boilerplate allegations of damages, like the plaintiff in *Saxon*. Plaintiff contends that, while MFB has not

---

[39] R. Doc. 11-1, ¶ 6.
[40] R. Doc. 10, p. 4, n. 2 *citing Carbajal v. Caskids Oil Operating Co.,* No. 05-5966, 2006 WL 1030392, at *2 (E.D. La. Apr. 18, 2006).
[41] MFB also attached, but did not expound upon, Plaintiff's transcribed October 25, 2017 oral statement to "Keith Reeves," who appears to be an insurance adjuster that spoke with Plaintiff over the telephone the day after the accident. During that telephone call, Plaintiff stated that her car sustained damages on the driver's side, but it was drivable, and, at the time of the call, Plaintiff was injured in her neck, lower part of her back, and the left or right side of her buttocks. Plaintiff confirmed that she visited the hospital the previous day. R. Doc. 11-5, p. 3.
[42] R. Doc. 15-1, p. 5 *citing Shamrock v. Oil and Gas Corp. v. Sheets*, 313 U.S. 100, 61 S.Ct. 868, 1941, 85 L.Ed. 1214 (1941) and *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).
[43] R. Doc. 15-1, p. 3 and p. 5.
[44] R. Doc. 15-1, pp. 3-4.
[45] R. Doc. 15-1, p. 6 *citing* No. 06-2339, 2007 WL 1115239 (W.D. La. Apr. 12, 2007).

8

made any offers in excess of $75,000, MFB wants Plaintiff to agree that the case is worth less than that amount, which Plaintiff declines to do. Plaintiff avers that all MFB has presented are opinions on the injuries that occurred, without providing any supporting evidence that the damages will exceed the jurisdictional threshold, which fails to carry MFB's burden under *Saxon*.[46] For these reasons, Plaintiff contends the matter should be remanded.

Finally, Plaintiff argues that costs, including attorney's fees, may be imposed against removing parties pursuant to 28 U.S.C. § 1447, and the relevant inquiry in making such an award is whether the defendant had objectively reasonable grounds to believe the removal was legally proper, which determination is based on an objective view of the legal and factual elements in each case.[47] Herein, Plaintiff contends that an award of attorney's fees is warranted because of MFB's "bare bones and frivolous notice of removal [that] lacks any merit."[48]

MFB did not file an opposition addressing Plaintiff's arguments.

### III. Law and Analysis

#### A. Legal Standards

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."[49] When original jurisdiction is based on diversity of citizenship, the cause of action must be between "citizens of different States" and the amount in controversy must exceed the "sum or value of $75,000, exclusive of interest and costs."[50] Remand is proper if at any time the court lacks subject matter jurisdiction.[51] The removal

---

[46] R. Doc. 15-1, p. 4.
[47] R. Doc. 15-1, p. 5 *citing Valdes v. Wal-Mart Stores, Inc*., 199 F.3d 290, 293 (5th Cir. 2000) *and Kent v. Ford Motor Co.,* No. 01-379, 200 F.Supp.2d 670, 672 (S.D. Miss. Apr. 1, 2002).
[48] R. Doc. 15-1, p. 5.
[49] 28 U.S.C. § 1441(a).
[50] 28 U.S.C. § 1332(a)(1).
[51] *See* 28 U.S.C. § 1447(c).

9

statute, 28 U.S.C. § 1441, is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand.[52]

If removal is sought on the basis of diversity jurisdiction, then "the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."[53] If, however, the "[s]tate practice ... does not permit demand for a specific sum" removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds [$75,000]."[54] In Louisiana state court, plaintiffs are generally prohibited from alleging a specific monetary amount of damages sought in their petitions.[55]

The burden of proof is on the removing defendant to establish that the amount in controversy has been satisfied.[56] The defendant may make this showing by either (1) demonstrating that it is facially apparent that the claims are likely above $75,000, or (2) setting forth facts in controversy that support a finding of the jurisdictional minimum.[57] If the defendant can produce evidence sufficient to show by a preponderance, *i.e.*, summary judgment-type evidence, that the amount in controversy exceeds the jurisdictional threshold, the plaintiff can defeat diversity jurisdiction only by showing to a legal certainty that the amount in controversy does not exceed $75,000.[58] The jurisdictional facts that support removal must be judged at the time of removal.[59]

---

[52] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).
[53] 28 U.S.C. § 1446(c)(2).
[54] 28 U.S.C. § 1446(c)(2)(A)(ii)–(B).
[55] La. Code Civ. P. art. 893(A)(1).
[56] *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999).
[57] *Id., and see Richard v. Georgia Gulf Lake Charles, LLC,* No. 07-0050, 2007 WL 2319804, *7 (W.D. La. Aug. 10, 2007) *citing De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1412 (5th Cir. 1995).
[58] *See, e.g., Grant v. Chevron Phillips Chemical Co.*, 309 F.3d 864, 869 (5th Cir. 2002) and *De Aguilar*, 47 F.3d at 1412.
[59] *Kimble v. America First Ins. Co.*, No. 14-67, 2014 WL 1761556, at *2 (M.D. La. Apr. 28, 2014), *citing Gebbia,* 233 F.3d at 883 and *Womack v. National Union Fire Insurance Company,* No. 16-13127, 2016 WL 4728096, at *1 (E.D. La. Sept. 12, 2016).

Since the parties are of diverse citizenship, which is undisputed, the only issue with regard to the Court's exercise of subject matter jurisdiction is whether the amount in controversy has been satisfied under 28 U.S.C. § 1332(a).

### B. It Is Not Facially Apparent From the Petition That the Amount in Controversy Is Met.

The undersigned previously determined that it was not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000, which was the reason for the October 4, 2018 *sua sponte* order.[60] In particular, Plaintiff's Petition only asserts boilerplate categories of damages,[61] which fails to establish that Plaintiff's damages in this case will likely exceed $75,000, exclusive of interest and costs.[62] MFB correctly recognizes in its Memorandum (despite a conflicting statement in its Amended Notice), that it is not facially apparent from the Petition that the amount in controversy is likely to exceed $75,000.[63] Therefore, the undersigned analyzes only the question of whether MFB has established by a preponderance of the evidence that the amount in controversy is met.

### C. MFB Has Not Met Its Burden of Establishing that the Amount in Controversy Likely Exceeds $75,000, Exclusive of Interest and Costs

Based upon a review of the record, MFB has failed to establish by a preponderance of the evidence that the amount in controversy is met. In its Amended Notice and Memorandum, MFB

---

[60] R. Doc. 6, p. 4. ("However, as explained above, it is not facially apparent from the Petition that the jurisdictional minimum is reached."). The Petition contains only a short boilerplate list of general damages. R. Doc. 1-2, p. 5, ¶ 9.
[61] However, as mentioned, a plaintiff's general allegations of "serious injuries" and general categories of damages are insufficient. *See Davis*, 2012 WL 278728 at *3, and cases cited therein.
[62] *See Saxon,* 2007 WL 1115239, at *3 (W.D. La. Apr. 12, 2007) ("If the scant facts set forth in this petition, combined with a prayer for certain categories of damages (prayed for in almost every personal injury case of any magnitude) were deemed adequate to allow federal diversity jurisdiction, there would be very few slip and fall, car accident or other personal injury cases that would not meet the amount in controversy requirement. Congress's imposition of a $75,000 threshold for removal of such cases would be eviscerated. *See also, Guillory v. Chevron Stations, Inc.,* 03-2385, 2004 WL 1661201 (E.D.La. 2004) (distinguishing *Gebbia* and remanding knee injury case despite claims for several categories of damages).").
[63] R. Doc. 10, p. 5 *but see* R. Doc. 11-1, ¶ 6.

11

relies exclusively on Plaintiff's medical records as its summary judgment-type evidence;[64] however, in this case, the medical records do not show that Plaintiff's claims are likely to exceed $75,000, exclusive of interest and costs. The records reflect that Plaintiff received only about three months of conservative treatment for her pain and injuries--a cervical lumbar strain with spondylosis and cervical spasm status post-cervical fusion[65]--which injuries were not indicated to be disc herniations or to require injections.[66] The treatment itself included only four visits with orthopedist Dr. Johnston and about 21 physical therapy visits, for which Plaintiff only incurred about $7,922 in medical expenses. This amount of past medical expenses falls far short of establishing that Plaintiff's claims will exceed the jurisdictional minimum.[67]

---

[64] *See* R. Doc. 10, pp. 1-2 and R. Doc. 11-1, ¶ 13 and *Johnson v. Macy's Dep't Store*, No. 14-226, 2014 WL 5822788, at **5-6 (M.D. La. Nov. 10, 2014) (holding that the removing defendant submitted summary judgment-type evidence, including the plaintiff's medical records, to establish that the plaintiff's claims likely satisfied the amount in controversy requirement).

[65] R. Doc. 11-2, p. 9 and R. Doc. 11-4, p. 30.

[66] At Plaintiff's third visit, Dr. Johnston noted that if an MRI revealed abnormalities and Plaintiff's pain did not improve, "then she will be a candidate for interventional injections." R. Doc. 11-2, p. 14. However, at the fourth and final visit, Dr. Johnston noted that Plaintiff only experienced "intermittent discomfort" in her neck and low back and she was satisfied with the progress that she had made. R. Doc. 11-2, p. 15.

[67] This Court has declined to find that the amount in controversy is met on more serious cervical injuries. *See, e.g., Cole v. Mesilla Valley Transportation*, No. 16-841, 2017 WL 1682561, at *5 (M.D. La. Mar. 15, 2017), *report and recommendation adopted*, No. 16-841, 2017 WL 1684515 (M.D. La. May 1, 2017) (amount in controversy not satisfied when Plaintiff had several disc bulges, was recommend for an epidural steroid injection, and had incurred $7,318 in past medical expenses at the time of removal) *and see id.*: "Several recent federal court decisions have held that the removing defendant did not meet its burden of providing the amount in controversy where the plaintiff suffered disc bulging or herniation without operation, and incurred less than $15,000 in medical expenses at the time of removal. *See Barrow v. James River Ins. Co.*, No. 16-15967, 2017 WL 656725 (E.D. La. Feb. 15, 2017) (amount in controversy not satisfied where plaintiff incurred $4,600 in medical expenses at time of removal, and received physical therapy and an epidural steroid injection to treat disc herniations at L3-4, L4-5 and L5-S1); *McCain v. Winn-Dixie Montgomery, LLC*, No. 16-1546, 2016 WL 2908418 (E.D. La. May 19, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $6,384 in medical expenses at time of removal, and medical records indicated annular cervical bulges at C4-5, C5-6, and C6-7; exacerbation of several preexisting lumbar disc herniations; and other injuries to wrist and hip); *Robichaux v. Wal-Mart Stores, Inc.*, No. 16-1786, 2016 WL 1178670 (E.D. La. Mar. 28, 2016) (amount in controversy not satisfied where slip-and-fall plaintiff incurred $7,555 in medical expenses at time of removal, and MRI demonstrated that the plaintiff had a "mild bilateral facet arthropathy at L3-4, bilateral facet arthropathy and a circumferential broad based posterior disc bulge with resultant mild central canal stenosis and biltateral foraminal narrowing at L4-5, and mild bilateral facet arthropathy at L5-S1"); *Powell v. Cadieu*, No. 15-4839, 2016 WL 1042351 (E.D. La. Mar. 16, 2016) (amount in controversy not satisfied where plaintiff incurred $1,948 in medical expenses at time of removal, and MRI tests indicated plaintiff had "lumbar facet arthrosis at L3-4 and L4-5 with bulging at L3-4 with annulus fibrosus tear with bulging at L5-S1 and L2-3 and L4-5"); *Arnold v. Lowe's Home Centers, Inc.*, No. 10-4454, 2011 WL 976512 (E.D. La. Mar. 16, 2011) (amount in controversy not satisfied where slip-and-fall plaintiff incurred approximately $12,000 in medical expenses at time of removal, and suffered a herniated disc at C3-4 for which epidural steroid injections were prescribed); *cf. Thibodeaux v. GEICO Advantage Ins. Co.*, No.

12

As for future medical expenses, the nature of Plaintiff's diagnosed injuries, *i.e.*, cervical strain and spasm, do not indicate that her anticipated medical expenses will reach the jurisdictional minimum, particularly because there is no recommendation for future or continuing treatment, much less a surgical recommendation for Plaintiff, and no prognosis of permanent disability or injury. In fact, Dr. Johnston's records indicate that as far back as December 2017, Plaintiff stated her pains "are slowly improving," and by January 2018, she had completed physical therapy, was no longer using prescription medication, only experienced intermittent discomfort in her neck and low back, and "at this time she is satisfied with the progress she has made."[68] Likewise, her physical therapy records indicate that, by November 27, 2017, Plaintiff reported "decreased pain intensity since PT," on December 2, 2017 and December 6, 2017, Plaintiff reported no pain, on December 13, 2017, Plaintiff reported that she was feeling better, on December 14, 2017, January 4, 2018, and January 15, 2018, Plaintiff demonstrated "good progress toward her functional goals," and by January 28, 2018, Plaintiff "report[ed] discharge per MD's office/per patient request," and had "completed therapy…."[69] The foregoing records show that Plaintiff's visits with her providers were productive and over the course of three months, her condition improved such that she no longer needed medication or required continuous treatment. Therefore, it is unlikely that Plaintiff has a significant claim for future medical expenses (if any). As for lost earnings, at most, there is evidence that Plaintiff received one medical excuse for a day of missed work.[70] MFB has not

---

16-158, 2016 WL 4055660 (M.D. La. July 8, 2016) (denying remand where "defendants correctly pointed out that the medical bills show consistent treatment with charges in excess of $45,000" and "[t]he medical records provided by the defendants similarly show that [the Plaintiff] had preexisting injuries in his neck and back that were aggravated by the ... accident.")."
[68] R. Doc. 11-2, pp. 14-15.
[69] R. Doc. 11-4, pp. 3, 6-7, 16-17, 20, and 23.
[70] R. Doc. 11-2, p. 10.

13

submitted any summary-judgment-type evidence to support the calculation of a numerical figure for Plaintiff's past and/or future lost wages.[71]

In this case, there is simply no information in the record that shows, by a preponderance of the evidence, that Plaintiff's damages, which in this case arose out of a motor vehicle accident that, according to the Notice of Removal and attached medical records, caused cervical strain and spasm, will likely exceed $75,000 when Plaintiff only received three months of conservative treatment at the conclusion of which she admitted she was satisfied with her progress.[72] Remand has been ordered even where the evidence established that the plaintiff's past medical expenses exceeded $50,000 and general damages were claimed because there was no evidence that the plaintiff's damages likely exceeded $75,000 exclusive of interest and costs (*i.e*., there was no evidence of the plaintiff's future medical expenses, present medical condition, past, present or future lost wages, lost earning capacity, or other damages.).[73]

MFB's authority on quantum is not persuasive because it is factually distinguishable. In *Pollet v. Louisiana Farm Bureau*,[74] the plaintiff was injured in a motor vehicle accident when a driver ran a stop sign and hit the side of her vehicle, which caused her car to spin around. The plaintiff had a pre-existing surgery that removed discs from her back 25 years before the motor

---

[71] *See Cole*, 2017 WL 1682561 at *6 ("…to the extent Mr. Cole is seeking recovery for lost wages, ATTIC has only established that he was on short term disability for 3 months from his position as a warehouse worker. ATTIC does not submit any summary judgment-type evidence to support the calculation of a numerical figure for Mr. Cole's past and/or future lost earnings.")

[72] R. Doc. 1-2, p. 5, ¶ 9, R. Doc. 11-1, ¶ 13, and medical records at R. Docs 11-2 through 11-4, and particularly, R. Doc. 11-2, p. 15. *See also Simon v. Wal-Mart Stores, Inc.,* 193 F.3d 848, 849–50 (5th Cir. 1999) (remanding the plaintiff's claims for bodily injuries and damages, including but not limited to a severely injured shoulder, soft-tissue injuries throughout the plaintiff's body, bruises, abrasions and other injuries, medical expenses and loss of consortium after the plaintiff was dragged through a Wal-Mart parking lot the distance of several parking spaces by an assailant in a car who grabbed the purse wrapped around her arm). While the plaintiff likely had fewer types of injuries in *Simon*, the circumstances wherein she sustained them were more egregious than Plaintiff's motor vehicle accident; yet, the Fifth Circuit ordered remand because of the defendant's failure to establish that the *Simon* plaintiff's damages exceeded the federal jurisdictional minimum.

[73] *Robertson v. Boyd*, No. 16-1547, 2016 WL 3086164, *3 (E.D. La. June 2, 2016).

[74] 751 So.2d 925.

vehicle accident at issue. Until the accident at issue, the plaintiff had no back difficulties after her surgery. However, after the accident, the plaintiff had back and neck pain in connection with muscle spasms that were characterized as giving rise to "continuous pain, sometimes more severe than other times." The plaintiff could no longer pick up her grandchildren, perform certain job duties, or ride her bicycle for five miles each day for fear of further injury. Furthermore, initially after the accident, the plaintiff saw the doctor once a month, and at the time of trial, she was still treating every two to three months. The plaintiff continued to have muscle spasms two years after the accident and considered retiring because of the pain she experienced. The trial court awarded the plaintiff general damages of $75,000.00, based on evidence that the plaintiff's lower back injuries, caused by the accident at issue, would cause her pain for the rest of her life. The appellate court noted that that the general damage award also covered the plaintiff's claims for future medical expenses, as the testimony showed that the plaintiff would continue to require conservative treatment for as long as she suffered pain, which was "probably the rest of her life."[75] In contrast to the foregoing facts, in this case, there is no evidence that Plaintiff has continued treatment beyond January 2018, that she remains in continuous pain, that she is prevented from engaging in work duties and life activities and/or is considering retirement due to her injuries. There is also no evidence that Plaintiff here will be in pain for the rest of her life. Rather, Dr. Johnston's records reflect that, on Plaintiff's last visit, her pain was only "intermittent," she was satisfied with her progress, and she was no longer using pain medication.[76]

Likewise, *Trahan v. Deville*[77] is factually distinguishable. In *Trahan*, the plaintiff was injured while attempting to pass a left-turning motorist and hit a mailbox in an effort to avoid a

---

[75] 751 So.2d at 927-28.
[76] R. Doc. 11-2, pp. 14-15.
[77] 933 So.2d 187.

15

collision. The plaintiff underwent massage therapy and chiropractic treatment for her back pain but also suffered from severe headaches, stating that one lasted for a week. When her physicians were unable to alleviate the headaches, they terminated her physical therapy. The plaintiff ultimately transferred to an orthopedic physician, but he concluded that the plaintiff was experiencing chronic pain for which there was no surgical solution. The plaintiff underwent spinal injections, bone scans, nuclear testing, x-rays, MRI's, nerve testing and physical therapy over a period of several months and incurred past medical expenses of $22,938.45. The *Trahan* court awarded $75,000, finding that the plaintiff's recreational and work-related activities (*i.e.*, fishing, crabbing, hunting and painting) were limited due to ongoing pain and would continue to be limited. The *Trahan* court also awarded $10,000 in future medical expenses because the plaintiff likely required short-term treatment.[78] In contrast, there is no evidence that Plaintiff in this case will be limited in any activities, or that her treatment has continued beyond January 2018. Plaintiff's past medical expenses were only one-third of the amount incurred by the *Trahan* plaintiff, and that is no evidence that Plaintiff here has undergone any injections, as her doctor stated that "she [would] be a candidate for interventional injections" only if an MRI revealed abnormalities and Plaintiff's pain did not improve.[79]

*Robinson v. Fontenot*[80] is also factually distinguishable. In that case, the plaintiff, a nurse manager, slipped on spilled ice on the emergency room floor and fell, injuring her sacroiliac joint ("SI joint"). She missed about 3 months of work. She returned to work for two months, and then apparently re-injured herself in a non-work setting. Following the second incident, the plaintiff did not return to work, experienced several hospitalizations due to pain, and eventually underwent

---

[78] 933 So.2d at 189, 192-93.
[79] R. Doc. 11-2, p. 14.
[80] 837 So.2d at 1280.

16

an SI joint fusion. The plaintiff was ultimately prohibited from performing patient care responsibilities.[81] The jury awarded her the exact amount claimed for past medical expenses and past lost wages based upon the time period in between the first and second injuries, as well as damages for pain and suffering. In contrast, in this case, and as has been previously mentioned, Plaintiff's medical expenses were only about $8,000 and there is no evidence of more than one day of lost wages. Furthermore, Plaintiff herein was not hospitalized, did not undergo surgery and was not recommended for surgery, is not limited in her job duties, and there is no indication that she has missed much work.

Finally, while Plaintiff refused to enter into the stipulation proffered by MFB that her damages were less than $75,000,[82] that assertion alone is not enough to show that the jurisdictional minimum is reached.[83] It is not clear whether the refusal to stipulate was because Plaintiff's counsel truly was unsure of the extent of Plaintiff's injuries or because counsel believed Plaintiff's injuries were likely to exceed $75,000. Based on the referenced correspondence, however, it appears to be the former.[84] Regardless, the removal statute is strictly construed "and any doubt as to the propriety of removal should be resolved in favor of remand."[85] For these reasons, MFB has

---

[81] 837 So.2d at 1281. The jury assessed the total amount of damages that the *Robinson* plaintiff had suffered as $38,107.50 for physical pain and suffering, $38,107.50 for mental pain and suffering, $12,171.08 for past medical expenses, and $11,614.00 for past loss of earnings. The jury did not award any amount for future loss of earnings or future medical expenses. The total of the jury award was $100,000.08. *Id*. The appellate court upheld the trial court's JNOV increasing the amount of the awards, finding that the evidence indicated that the second injury was an aggravation of the first; however, the Louisiana Supreme Court reversed, and reinstated the jury's damage awards, noting that the jury was entitled to find that the second injury was a new injury unrelated to the first. *Id.* at. 1281-82, 1286-87.

[82] R. Doc. 1-3, pp. 1-4.

[83] *See Cuillier*, 2007 WL 4591229 at *1, *Adams,* 2007 WL 4591230 at *1 and *Manuel,* 2007 WL 4570896 at *1.

[84] *See* R. Doc. 11-1, ¶6 ("[M]r. Gay expressed that the amount in controversy in this case was 'for the jury to decide' and that the case 'may be worth $74,000 or it may be worth $80,000.' When asked what amounts the jury would be asked to give he at first said he would not give them any numbers at all, but then said he will have more information about the case by that time and that he could not say presently.")

[85] *Gutierrez v. Flores,* 543 F.3d 248, 251 (5th Cir. 2008) *citing In re Hot–Hed, Inc.,* 477 F.3d at 323.

17

failed to carry its burden of proving that Plaintiff's damages in this case exceed $75,000, exclusive of interest and costs, and recommends that this case be remanded to state court.

### D. An Award of Costs and Fees is Not Warranted In This Case

Plaintiff also requests an award of costs and fees incurred in filing her Motion to Remand pursuant to 28 U.S.C. § 1447(c), which provides, in pertinent part, that an order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.[86] However, there is no automatic entitlement to an award of attorney's fees under § 1447(c), as the clear language of the statute makes such an award discretionary.[87] In applying § 1447(c), courts consider "the propriety of the removing party's actions based on an objective view of the legal and factual elements in each particular case.... In other words, the question we consider in applying § 1447(c) is whether the defendant had objectively reasonable grounds to believe the removal was legally proper."[88]

Review of the record shows that an award of costs and attorney's fees is not warranted in this case. Plaintiff claimed "pain and suffering, mental anguish and suffering, loss of enjoyment of life, medical expenses" and other items of damages, did not specifically state in the Petition that the federal jurisdictional amount was not met, and refused to execute the stipulation offered to her.[89] While doubt is resolved in favor of remand, the issue of whether the jurisdictional minimum was met was not obvious and MFB had some evidence that provided objectively reasonable grounds for removal. As such, Plaintiff's request for the costs and attorney's fees incurred in filing the Motion to Remand should be denied.

---

[86] 28 U.S.C. § 1447(c), R. Doc. 5, p. 1 and R. Doc. 15-1, p. 5.
[87] *Valdes*, 199 F.3d at 291.
[88] *Id.* at 293.
[89] R. Doc. 1-2, ¶ 9, R. Doc. 1-3, pp. 1-4, and R. Doc. 11-1, ¶ 6.

18

## IV.  Recommendation

**IT IS RECOMMENDED** that the Motion to Remand,[90] filed by Plaintiff Ora Williams, be **GRANTED IN PART,** and this matter be remanded to the Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana, for lack of subject matter jurisdiction under 28 U.S.C. § 1332(a).  **IT IS FURTHER RECOMMENDED** that Plaintiff's request for an award of costs and attorney's fees under 28 U.S.C. § 1447(c) be **DENIED.**

Signed in Baton Rouge, Louisiana, on August 20, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[90] R. Doc. 15.